FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 1 0 2022

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THE STATE OF ARKANSAS, ex rel., LESLIE RUTLEDGE, ATTORNEY GENERAL

*Plaintiff,*

v.

ELI LILLY AND COMPANY; NOVO NORDISK INC.; SANOFI-AVENTIS U.S. LLC; EVERNORTH HEALTH, INC. (FORMERLY EXPRESS SCRIPTS HOLDING COMPANY); EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY SERVICES, INC.; EXPRESS SCRIPTS PHARMACY, INC.; MEDCO HEALTH SOLUTIONS, INC.; CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, LLC; CAREMARK PCS HEALTH, LLC; CAREMARK, LLC; UNITEDHEALTH GROUP, INC.; OPTUM, INC.; OPTUMRX INC.; OPTUMRX HOLDINGS, LLC; AND OPTUMINSIGHT, INC.

*Defendants.*

Civil Action No. 4:22-cv-549-JM

Removed from Case No. 60CV-22-2976 Circuit Court of Pulaski County, Arkansas

This case assigned to District Judge Moody
and to Magistrate Judge Harris

## NOTICE OF REMOVAL

Pursuant to and in accordance with 28 U.S.C. §§ 1442(a) and 1446, Defendants Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc.[1], and Express Scripts Pharmacy, Inc. (collectively, "Express Scripts") hereby remove *State of Arkansas ex rel. Rutledge v. Eli Lilly, et al.* (Civ. No. 60CV-22-2976) from the Circuit Court of Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Central Division.

---

[1] Plaintiff's Complaint improperly identified Defendant ESI Mail Pharmacy Service, Inc. as "ESI Mail Pharmacy Services, Inc."

1

## **INTRODUCTION**

1. Express Scripts is a significant contractor with the federal government. Express Scripts, Inc. currently contracts with the United States Department of Defense ("DoD") to provide services to members of the DoD's TRICARE health care program across the country, including in Arkansas. A true and correct copy of the publicly available contract between the Department of Defense and Express Scripts, Inc., Contract No. HT-9402-14-D-0002 (the "TRICARE Contract"), with certain redactions consistent with the Freedom of Information Act, is attached hereto as **Exhibit A**.

2. Under the TRICARE Contract, Express Scripts, Inc. provides pharmacy benefit management services for the DoD, including active-duty service members, their families, and veteran retirees. As of 2017, over 220,000 veterans reside in Arkansas.[2] Many of those veterans depend on TRICARE for their prescription drugs, including insulin.

3. As subcontractors to Express Scripts, Inc., Defendants Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Service, Inc. administer the mail order pharmacy portions of the TRICARE Contract. Under said agreement, Express Scripts is directed to charge TRICARE beneficiaries only such copayments as are dictated by the DoD, and to dispense medications purchased by the DoD at rates negotiated directly between the federal government and drug manufacturers.

4. In this action, the state of Arkansas (through Attorney General Rutledge) alleges that the prices paid by the citizens of Arkansas for certain insulin products are artificially inflated by a sprawling "Insulin Pricing Scheme" involving certain Pharmacy Benefit Managers ("PBMs") and insulin manufacturers.

---

[2] *See, e.g.*, https://www.va.gov/vetdata/docs/SpecialReports/State_Summaries_Arkansas.pdf.

5. Some of those Arkansas citizens allegedly injured by the scheme are TRICARE beneficiaries. Certain TRICARE beneficiaries acquire insulin products through the TRICARE Home Delivery/Mail Order Pharmacy ("TMOP") administered by Express Scripts under the TRICARE Contract. The formulary used for TRICARE beneficiaries, the prices the federal government pays for the insulin products, and critically, the co-payments Express Scripts must ensure beneficiaries pay, are all dictated by federal law and the TRICARE Contract.

6. Arkansas alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs as a result of the scheme, including copayments. *See* Compl. ¶ 289.

7. For relief, Arkansas asks to require "Defendants to pay all consumer restitution that may be owed to Arkansas consumers affected by Defendants' unlawful acts and practices, pursuant to Ark. Code Ann. § 4-88-113(a)(2)(A)." Compl. at 123 § D.

8. Arkansas Code § 4-88-113(a)(2)(A) states that in any proceeding brought by the Attorney General for civil enforcement, the circuit court may make orders or judgments as necessary to "[r]estore to any purchaser who has suffered any ascertainable loss by reason of the use or employment of the prohibited practices any moneys or real or personal property which may have been acquired by means of any practice declared to be unlawful by this chapter, together with other damages sustained."

9. Arkansas thus seeks the return of all out-of-pocket costs any Arkansas citizen has paid for insulin, necessarily including TRICARE beneficiaries who receive insulin through the mail-order pharmacies administered by Express Scripts, and including TRICARE beneficiaries who paid co-pays fixed by the federal government and implemented by Express Scripts at retail network pharmacy locations.

10. Under the TRICARE Contract, Express Scripts had no choice but to ensure the charging of the co-payments from TRICARE beneficiaries that Arkansas now seeks as restitution.

11. Accordingly, and as more fully explained below, Express Scripts has colorable government contractor immunity and preemption defenses to Arkansas's claims, permitting Express Scripts to remove the entire action under 28 U.S.C. § 1442(a)(1).

## BACKGROUND

12. On May 11, 2022, the State of Arkansas (through Attorney General Rutledge) filed a Complaint in the circuit court of Pulaski County, Arkansas. A copy of Arkansas's Complaint is attached hereto as **Exhibit B**.

13. On May 12, 2022, Arkansas served a copy of the Complaint on Removing Defendant Express Scripts Pharmacy, Inc. The next day, Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc. were served with a copy of the Complaint.

14. The State brings its action against two categories of defendants: "Manufacturer Defendants" and "Pharmacy Benefit Manager Defendants."

- The State alleges that the "Manufacturer Defendants" are Eli Lilly and Company, Sanofi-Aventis U.S. LLC, and Novo Nordisk Inc.

- The State alleges that the "PBM Defendants" are CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumRx Holdings, LLC, and OptumRx, Inc.

15. Arkansas alleges a conspiracy between the Manufacturer Defendants and the PBM Defendants to artificially inflate the price of insulin and other diabetes medications. *See* Compl. ¶¶ 5–27. Arkansas seeks disgorgement, restitution, civil penalties, actual damages, treble damages, punitive damages, and attorneys' fees for claims under the Arkansas Deceptive Trade Practices

Act (Count I) as well as common law claims for unjust enrichment (Count II) and civil conspiracy (Count III). *See* Compl. ¶¶ 37, 501–528.

16. Arkansas seeks to recover for its own alleged injuries (*see, e.g.*, Compl. ¶¶ 459–69) as well as for injuries allegedly suffered by Arkansas diabetics (*see, e.g.*, Compl. ¶¶ 470–75).

17. The Complaint also includes an application for injunctive relief. Compl. ¶¶ 513, 515.

## VENUE

18. Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district and division embracing the Circuit Court of Pulaski County, the court from which removal is sought. *See* 28 U.S.C. § 83(a)(1).

## GROUNDS FOR FEDERAL-OFFICER REMOVAL

19. The federal-officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1).

20. The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969)). Rather, "[t]he federal officer removal statute is to be 'liberally construed,' and thus the typical presumption against removal does not apply." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) (citing *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250–51 (4th Cir. 2021)).

21. In the Eighth Circuit, a party removing under the federal-officer-removal statute must show that (i) it is a "person" within the meaning of the statute, (ii) it acted "pursuant to a federal officer's directions," (iii) the charged conduct is connected with or related to an act

pursuant to a federal officer's directions, and (iv) it asserts a "colorable federal defense." *Buljic*, 22 F.4th at 738. Express Scripts satisfies all four elements here.

### i. The Removing Defendants are "Persons" Within the Statute's Meaning.

22. Removing Defendants are all "persons" under the federal-officer removal statute because "the 'person' contemplated by the federal officer removal statute includes corporations." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Baltimore,* 141 S. Ct. 1532, 1543 (2021) (recognizing appellate courts have jurisdiction to review all grounds for removal under 28 U.S.C. § 1447(d) not just those grounds for which Congress has authorized an immediate appeal).

### ii. Express Scripts Acted "Pursuant to a Federal Officer's Directions."

23. Private entities "act[] under" a federal officer when involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Buljic*, 22 F.4th at 738 (internal quotations and emphases omitted).

24. The DoD is required by law to engage companies like Express Scripts for the provision of healthcare services to TRICARE members. *See* 10 U.S.C. § 1073a. Congress also has required the Secretary of Defense to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE. 10 U.S.C. § 1074g.

25. The DoD contracted with Express Scripts, Inc. to provide pharmacy benefits to members of the DoD's TRICARE health care program across the country, including in Arkansas. *See* Exhibit A.

26. Express Scripts provides PBM services and administers TMOP, the DoD's mail-order pharmacy program, under the detailed requirements of the TRICARE Contract and lengthy

Statement of Work with the DoD. The Statement of Work is "Section C" of the TRICARE Contract and is available on pages 62–120 of Exhibit A.

27. The DoD dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE. The TRICARE Contract requires the use of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products." Ex. A at § C.1.4. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee." *Id.* When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, Express Scripts serves in a capacity as a "fiscal intermediary *on behalf of DoD* to pay for all authorized pharmaceutical and supplies dispensed for eligible beneficiaries are retail pharmacies." Ex. A at § C.1.6 (emphasis added). Or, as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies. *Id.*

28. These requirements are all mandated by Congress. 10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee"). Congress not only requires cost-sharing that favors generics, but it spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

29.  Express Scripts supports TRICARE's pharmacy benefit program under the careful direction of the DoD. When it causes any co-payment to be charged to any TRICARE beneficiary for any product, including the insulin products at issue in this action, it does so in the manner and according to the directions carefully prescribed by the DoD. Ex. A. at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure").

30.  For TMOP, Express Scripts must collect co-payments from beneficiaries in accordance with the specific cost-sharing matrix set forth in the TRICARE Reimbursement Manual ("TRM").[3] *Id.* at § C.8.2 ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B. The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"). Express Scripts has a

---

[3]  The matrix included in the TRICARE Reimbursement Manual is available at https://manuals.health.mil/pages/DisplayManualHtmlFile/2021-09-03/AsOf/TR15/C2ADB.html.

similar obligation to "ensur[e] that the appropriate copayment is collected at retail network pharmacies." *Id.*

31. In short, as the Fourth Circuit recently put it, Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program." *Arlington Cnty.*, 996 F.3d at 253–54 (4th Cir. 2021).

32. Express Scripts performs the day-to-day administration pursuant to a lengthy and detailed contract from which Express Scripts lacks the discretion to depart. Express Scripts is thus "acting under" a federal officer when carrying out the TRICARE pharmacy program.

### iii. Express Scripts' Alleged Conduct Is Connected With or Related to An Act Pursuant to a Federal Officer's Directions.

33. To show a nexus or connection between the conduct and official authority, a defendant need only show that the conduct "relate[s] to" the asserted authority. 28 U.S.C. § 1442(a)(1); *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.* (*St. Charles II*), 990 F.3d 447, 454 (5th Cir. 2021) (explaining a defendant must show only that its alleged conduct is "'connected or associated with' (or 'related to') a federal directive.") (internal quotations omitted); *Arlington Cnty.*, 996 F.3d at 256 (explaining that there must be "a connection or association between the act in question and the federal office") (internal quotations omitted). Stated otherwise, "[t]he hurdle erected by this requirement is quite low." *Jacks*, 701 F.3d at 1224 n. 3 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)).

34. Arkansas alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs, including higher "deductibles, coinsurance requirements, or *copayment requirements*." Compl. ¶¶ 288–289 (emphasis added). Arkansas alleges that as a result of the alleged scheme, "nearly all Arkansas diabetics have been damaged

9

by having to pay for diabetes medications out-of-pocket based upon the artificial prices generated by the Insulin Pricing Scheme." Compl. ¶ 290; *see also* Compl. ¶ 470 ("all Arkansas diabetics pay a substantial part of their diabetic drug costs based on Defendants' artificially inflated list prices generated and thus the Insulin Pricing Scheme has directly damaged residents in Arkansas with diabetes.").

35. As explained above, for those Arkansas citizens receiving insulin through TRICARE—either from retail pharmacies or through the TMOP—the out-of-pocket costs those citizens must pay, and that Express Scripts ensure is collected, are dictated by federal law and Express Scripts' contract with the DoD.

36. Express Scripts' conduct of ensuring the collection of co-payments from TRICARE beneficiaries according to the schedules mandated by the federal government is, at a minimum, "connected or associated with" Arkansas's allegations that the out-of-pocket costs incurred by diabetic Arkansans are increased as a result of Express Scripts' alleged conduct.

   **iv. Express Scripts Has Colorable Federal Defenses.**

37. For federal-officer removal purposes, a defense only needs to be colorable. *Jefferson Cnty.*, 527 U.S. at 431. "Colorable" is a low bar; a defense is colorable if it is plausible—the statute "does not require a court to hold that a defense will be successful before removal is appropriate." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001); *see also Jacks*, 701 F.3d at 1235 ("We do not require that these defenses be clearly sustainable in order to support removal under § 1442(a)(1).").

38. Here, Express Scripts can raise a colorable government-contractor immunity defense and a colorable preemption-based defense.

39. The federal government contractor defense originally developed in the context of government contractors facing claims based on equipment manufactured by the contractor to government direction. Under a traditional tort liability formulation, the defense applies when (1) the United States approved reasonably precise specifications; (2) the contractor's work product (equipment) conformed to those specifications; and (3) the supplier warned the United States about the risks or exposures in the use of the equipment known to the supplier but not to the United States. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). Notwithstanding the origins of the defense, "it is at least plausible that the government contractor defense could apply outside the military procurement context." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010); *see also Jacks*, 701 F.3d at 1235 ("Neither does our lack of precedent regarding the availability of the *Boyle* defense to non-military service contractors defeat the plausibility of the defense.") (citing *Bennett*, 607 F.3d at 1089). Regardless of the context, the defense "applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." *Arlington Cnty.*, 996 F.3d at 255.

40. Arkansas alleges that the Arkansas Deceptive Trade Practices Act and state common law theories compel Express Scripts to have charged prices and assessed co-pays to Arkansas residents—necessarily including TRICARE beneficiaries—lower than it actually charged them pursuant to the directives of federal law and the terms of the DoD contract.

41. Based on Arkansas's allegations, Express Scripts cannot simultaneously comply with its obligations under the TRICARE Contract and contrary Arkansas law, which makes a federal contractor immunity defense colorable.

42. Arkansas seeks to collect as restitution for the alleged violations of Arkansas law the money that Arkansas consumers allegedly overpaid as a result of the supposed violations.

Compl. at 123, § D. Those alleged overpayments include, "deductibles, coinsurance requirements, or *copayment* requirements." Compl. ¶ 289 (emphasis added). For those citizens who are TRICARE beneficiaries, Express Scripts had no choice but to cause the charging of the specific co-payments required by the TRICARE Contract. *See* Ex. A. at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure"); *id.* at § C.8.2. ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B. The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"); *see also* 10 U.S.C. § 1074g(a)(6)(A).

43. Arkansas also seeks an injunction that could require Express Scripts to stop charging the co-payments required under the TRICARE Contract. Specifically, Arkansas seeks an injunction "prohibiting Defendants' conduct in violation of the ADTPA" and "prevent[ing] future deceptive and unconscionable trade practices under the ADTPA." Compl. ¶¶ 513, 515. Arkansas contends that collecting allegedly inflated payments from Arkansas citizens, including those relying on the TMOP, are violations of the ADTPA. *See, e.g.*, Compl. ¶ 512 ("[e]ach at-issue purchase the State and Arkansas diabetics made for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of the ADTPA"). Arkansas therefore seeks an injunction that, if granted, would purport to prohibit Express Scripts from collecting the co-payments from TRICARE beneficiaries that federal law and the TRICARE Contract mandate be collected—thereby creating another conflict between Arkansas law and Express Scripts' obligations under the TRICARE Contract.

44. In addition to government-contractor immunity, Express Scripts can raise the defense of preemption based on the federal TRICARE statute, which provides the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts. *See*

10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g. The statute and accompanying federal regulations contain express preemption provisions. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense," to the extent the state law is inconsistent, or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7).

45. The same conflict between Arkansas law and Express Scripts' obligations under the TRICARE Contract described above provides Express Scripts a colorable government contractor defense also permits Express Scripts to raise a preemption defense.

## SUPPLEMENTAL JURISDICTION

46. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action because they form part of the same case or controversy under Article III of the United States Constitution.

## ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED.

### A. The Notice of Removal Is Timely.

47. This Notice of Removal is timely because it is filed within 30 days of service of the complaint on the removing Defendants. 28 U.S.C. § 1446(b)(1). Express Scripts Pharmacy, Inc. was served on May 12, 2022 and the other Removing Defendants, Express Scripts, Inc. and Defendant ESI Mail Pharmacy Service, Inc. were served on May 13, 2022.

### B. Consent is not Required.

48. The federal-officer-removal statute does not require other Defendants to consent to removal. *Devazier v. Caruth*, 2016 WL 39939777, at *2 n.3 (E.D. Ark. July 15, 2016) ("the Federal Officer Removal Statute does not require that all defendants consent to removal; instead,

a federal officer or agency defendant can remove the case under that statute without unanimous consent.").

### C. Written Notice Of Removal.

49. In accordance with 28 U.S.C. § 1446(d), Express Scripts will give written notice of the filing of this Notice of Removal to all adverse parties of record in this matter and will file a copy of this Notice with the clerk of the state court.

50. Pursuant to 28 U.S.C. § 1446(a), Express Scripts attaches hereto as **Exhibit C** a copy of all process, pleadings, and orders served on it.

### CONCLUSION

WHEREFORE, Express Scripts removes this Action to this Court for further proceedings according to law.

This the 10th day of June 2022.

/s/ John Keeling Baker
John Keeling Baker, Ark. Bar No. 97024
John Polk Talbot, Ark. Bar No. 97119
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Facsimile: (501) 688-8807
Jbaker@mwlaw.com
Jtalbot@mwlaw.com

Attorneys for Express Scripts, Inc., Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Service, Inc.

## CERTIFICATE OF SERVICE

I, John Keeling Baker, hereby certify that, on June 10, 2022, a true and correct copy of the foregoing was provided to the following counsel of record either via the ECF system or via email:

Leslie Rutledge (ABN 2001126)
Leslie.Rutledge@ArkansasAG.gov
Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel. (501) 682-2007
Fax. (501) 682-8118

Shannon L. Halijan (ABN 2005136)
Shannon.Halijan@ArkansasAG.gov
Deputy Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel. (501) 683-1509
Fax. (501) 682-8118

Amanda D. Land (ABN 2012135)
Amanda.Land@ArkansasAG.gov
Senior Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel. (501) 682-2029
Fax. (501) 682-8118

Kim DuVall Renteria (ABN 2021307)
Kim.Renteria@ArkansasAG.gov
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel. (501) 682-7383
Fax. (501) 682-8118

Gary B. Rogers (ABN 82139)
grogers@ddh.law
DOVER DIXON HORNE, PLLC
425 West Capitol Avenue, Suite 3700
Little Rock, Arkansas 72201
Tel. (501) 375-9151
Fax. (501) 375-6484

J. Carter Fairley
D. Reece Owens
cfairley@barberlawfirm.com
rowens@barberlawfirm.com
Barber Law Firm PLLC
425 West Capitol Avenue, Suite 3400
Little Rock, Arkansas 72201
Tel. (501) 372-6175
Fax. (888) 412-3288

/s/ John Keeling Baker